IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 19–108–BLG–SPW |
| Plaintiff, | |
| vs. | ORDER |
| GREGG ALLEN JOHNSON, | |
| Defendant. | |

On February 1, 2024, Defendant Gregg Allen Johnson filed a pro se motion under 18 U.S.C. § 3582(c)(1)(A) to reduce his 94-month federal sentence for drug conspiracy and possession of a firearm in furtherance of a drug trafficking crime. (Doc. 117; *see* Doc. 97 (Judg.).) Counsel was appointed to represent Johnson. (Doc. 118.) Appointed counsel filed an amended motion on June 21, 2024. (Doc. 126.) The government opposes. (Doc. 130.) Johnson's projected release date is March 23, 2026. *See* Inmate Locator, http://www.bop.gov/inmateloc (accessed July 22, 2024). For the reasons stated below, Johnson's motion is denied.

## ANALYSIS

The First Step Act of 2018 gives district courts wide discretion to reduce an existing term of imprisonment so long as a defendant first seeks relief from the Bureau of Prisons ("BOP") and the reduction: (1) is consistent with the applicable

1

policy statements of the Sentencing Commission, (2) takes into consideration the sentencing factors of 18 U.S.C. § 3553(a), and (3) is warranted by "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A); *United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (per curiam).

Here, Johnson argues his release is justified due to family circumstances and "other reasons," including multiple BOP facility transfers and his harsh living conditions while incarcerated in protective custody for his own safety. (*See* Doc. 127 at 6, 11.) The government opposes Johnson's motion on the grounds that he would not be an appropriate caregiver for his daughter, who is incapacitated; normal placement within BOP facilities is not extraordinary and compelling; and his release would not be justified under the § 3553(a) sentencing factors. Ultimately, Johnson's daughter's incapacitation is an extraordinary and compelling reason for his release; however, because early release would not be justified under the § 3553 factors, Johnson's motion is denied.

## I.   Exhaustion of Administrative Remedies

A defendant may only file a motion for compassionate release with the district court once he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Johnson submitted a request for compassionate relief "based on concerns about COVID-19," which was denied by the BOP on March 21, 2022. (*See* Doc. 127-1 at 1.) In his instant motion, Johnson argues he has established an extraordinary and compelling reason for compassionate release because his adult daughter is incapable of self-care due to a mental disability. But Johnson's daughter's mental health concerns did not materialize until 2023, after Johnson's request based on COVID-19 was denied. (*See* Docs. 127-1 at 13, 17.) Because his present family circumstances were not the basis of his initial compassionate relief request, and because there is no evidence that Johnson made a new request to BOP after his daughter's commitment, Johnson did not "fully exhaust[]" as required by the statute. *See United States v. Ford*, 2021 WL 5980368, at *1–2 (N.D. Ind. Dec. 16, 2021) ("Exhaustion is required each time a defendant seeks compassionate release."). However, because the government does not object to, or even address, the issue of exhaustion, the issue is forfeited. *See Keller*, 2 F.4th at 1282 (holding that "§ 3582(c)(1)(A)'s administrative exhaustion requirement imposes a mandatory claim-processing rule that must be enforced when properly invoked[,]" but the objection "may be forfeited if the party asserting the rule waits too long to raise the point" (internal quotation marks and citations omitted)).

.

3

## II.   Extraordinary and Compelling Reasons

On November 1, 2023, the Sentencing Commission amended its policy statements under the Guidelines Manual §1B1.13(b) to provide explicit examples of what constitutes an "extraordinary and compelling reason" for compassionate release. *See* USSG App. C, amend. 814, at 204. Specific examples include: (1) certain serious medical circumstances of the defendant; (2) the advanced age of the defendant combined with serious health issues; (3) certain family circumstances of the defendant; (4) whether the defendant was a victim of sexual or physical abuse while in custody; (5) other circumstances (or a combination of circumstances) "similar in gravity" to (1)–(4); and in some narrow situations, (6) the defendant's unusually long sentence after a change in sentencing law.[1] *United States v. Kaneko*, 2024 WL 1018362, at *2 (D. Haw. Mar. 8, 2024). Relevant here, a defendant can demonstrate an extraordinary and compelling reason upon showing the "incapacitation of the defendant's minor child or the defendant's child who is

---

[1] The government argues this list is not binding, but that is no longer the case— "because the November 1, 2023 amendments to §1B1.13 expressly apply to motions brought by the BOP Director and to those brought by individual defendants, these amendments [(former policy statements)] are now binding on the court." *Kaneko*, 2024 WL 1018362, at *2; *United States v. Arcila*, 2024 WL 578688, at *2 (D. Or. Feb. 12, 2024) ("*Aruda* is no longer good law to the extent that it held that the policy statement is not binding on motions filed by defendants."); *see also United States v. Cunningham*, 2024 WL 50908, at *1–2 (D. Mont. Jan. 4, 2024); *United States v. Allard*, 2024 WL 3027064, at *1 nn.1, 2 (D. Mont. June 17, 2024). The government's arguments are considered under the framework of the current law.

4

18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition." USSG §1B1.13(b)(3)(A).

Johnson argues he has established an extraordinary and compelling reason justifying his release under §1B1.13(b)(3)(A) because his adult daughter is mentally incapacitated. Alternatively, he argues "other reasons" similar in gravity to the enumerated circumstances justify his release under §1B1.13(b)(5). Because Johnson's daughter's incapacitation is an extraordinary and compelling reason justifying his release, Johnson's alternative arguments are not reached here.

On February 22, 2024, Johnson's 19-year-old biological daughter was admitted to the Montana State Hospital ("MSH") under a civil commitment proceeding and was subsequently diagnosed with Schizoaffective disorder, bipolar type. (Doc. 127-1 at 8, 13.) In an evaluation dated May 1, 2024, her doctor at MSH reported her "psychiatric condition is very severe[], and grossly impairs her judgment and impulse control"; further, "because her behaviors are so unpredictable and dangerous to herself and others, she has required 1:1, and at times 2:1 nursing care, in addition to remaining in an Observation Room [where she is monitored by camera whenever in the room]." (*Id.*) The evaluation went on to describe the following behavior: "with no provocation or precipitating event, she will leap out of bed and RUN into the Dayroom with no regard for others and then assault a peer"; "she might jump from a chair in the Dayroom, run into her room

5

and dive off her bed, hitting her head"; or "she will be calmly eating a meal in the dayroom, and suddenly dump a full carton of juice all over her head." (*Id.*)

Johnson's daughter was released from MSH on June 11, 2024. (Doc. 127-1 at 13.) Johnson's 84-year-old mother, with whom his daughter currently resides, testifies that "she will need to be in the presence of responsible adults twenty-four hours a day for the foreseeable future to make sure she does not harm herself or others and to ensure her medical and basic needs are met." (*Id.*) Johnson's mother testifies that she currently works night shifts in excess of 40 hours per week and is not physically capable of restraining her granddaughter, if necessary. (*Id.* at 14.) Johnson's daughter's mother testifies she is not currently able to have her daughter stay with her, or to provide additional care for her beyond what her grandmother can provide. (*Id.* at 18.) Both affiants indicate that before he was incarcerated in 2019, Johnson played an active and important role in his daughter's life. (*Id.* at 12, 17.)

The government argues that, although the medical records establish Johnson's adult daughter "is impaired and incapable of providing care to herself[,] . . . Johnson is not in a position to be an appropriate caregiver at this time." (Doc. 130 at 8.) In support of its position, but without legal authority, the government asserts that "[i]f a defendant is asking for early release to care for a family member, the court must, as part of that decision, determine if the defendant

6

would be able to actually function as a competent caregiver." (Doc. 130 at 8.) Despite the government's objection, there is no reason for the Court to assume that Johnson, when sober, could not serve as his daughter's caregiver as he works to maintain his sobriety. Thus, Johnson has established an extraordinary and compelling reason for release.

### III.   Section 3553(a) Factors

To determine whether compassionate release is appropriate, a court must consider the federal sentencing objectives set forth in 18 U.S.C. § 3553(a). Pertinent factors include the "nature and circumstances of the offense and the history and characteristics of the defendant," the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," to deter criminal conduct and protect the public, and to provide effective correctional treatment, including education or vocational training and medical care. 18 U.S.C. § 3553(a)(1), (2). Courts may also consider the advisory guideline range and the need to "avoid unwarranted sentencing disparities" among similarly situated defendants. *See id.* § 3553(a)(4), (6).

Here, the § 3553(a) factors weigh against early release. Although Johnson seeks to minimize it, the instant offense conduct is extremely serious. Johnson and a co-defendant attempted to orchestrate a controlled buy of a large quantity of methamphetamine but walked away from the deal with a brick of rock salt. (Doc.

74 at 4.) After realizing they had been had, Johnson and two other men went to the seller's residence to recover the $3,000 they lost in the transaction. (*Id.*) When no one answered the front door, the men, who were all carrying firearms, walked around the house and entered through a back door. (*Id.*) A shootout ensued. (*Id.*) Johnson admitted to firing his weapon. (*Id.* at 5.) Notably, Johnson attempted to set up this drug deal gone wrong while facing state charges for multiple felony DUIs and criminal endangerment charges. (PSR ¶¶ 62–64.) Additionally, Johnson had been convicted of numerous felony DUI and criminal endangerment charges even before the instant offenses and served several years in prison for these prior felonies. (*Id.* ¶¶ 55–56.)

Johnson's advisory guideline range was 46 to 57 months for Count 1: Conspiracy to Possess with Intent to Distribute Methamphetamine, with a mandatory minimum consecutive term of 10 years imprisonment for Count 2: Possession of a Firearm in Furtherance of a Drug Trafficking Crime. (*Id.* at ¶ 115.) Johnson received a below-Guideline sentence of 24 months on his drug conviction and, with a consecutive 70 months for the gun charge, a total custodial term of 94 months. (Doc. 97 at 2.) Johnson's co-defendant, on the other hand, was sentenced to a total of 120 months due in part to his more significant criminal history, even though it was Johnson, not the co-defendant, who discharged his firearm in the gunfight. (*See* Doc. 110 at 4.) At sentencing, the Court acknowledged that

Johnson's time in pre-trial custody had been difficult because he had been threatened and forced to live in solitary lockdown. (*See* Doc. 98 at 4.) Accordingly, the Court varied downward on Count 1.

Thus, Johnson's existing sentence already reflects a favorable consideration of the nature and circumstances of the offense, as well as Johnson's role in the offense and his history and characteristics, including his dependence on drugs and alcohol and the difficult conditions in which he would likely be serving his custodial sentence. The sentence imposed provided a period of incarceration that reflected the seriousness of the offense, promoted respect for the law, and provided just punishment for the offense; it afforded specific deterrence and protected the public, as well as provided Johnson with much-needed treatment. Put simply, Johnson's sentence was the lowest the Court could justify in light of his conduct. Reducing his sentence further would denigrate the seriousness of his crimes and undermine respect for the law. *See* 18 U.S.C. § 3553(a)(2)(A)–(C).

## CONCLUSION

Accordingly, IT IS ORDERED that the defendants' motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Docs. 117, 126) are DENIED.

IT IS FURTHER ORDERED that the government is admonished that its briefing should not rely on pre-November 2023 legal precedent that does not

reflect the current law regarding motions for compassionate release. The Clerk is directed to include this language in the docket text.

DATED this 5th day of August, 2024.

/s/ Susan P. Watters
Susan P. Watters, District Judge
United States District Court